# IN THE SUPREME COURT OF IOWA

No. 06–1691

Filed November 13, 2009

**ROGER VAN FOSSEN,** Individually,
and as Personal Representative of
the ESTATE OF ANN VAN FOSSEN, Deceased,

    Appellant,

vs.

**MIDAMERICAN ENERGY COMPANY** and
**INTERSTATE POWER AND LIGHT COMPANY**,

    Appellees.

---

Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

Plaintiff appeals from a summary judgment ruling dismissing his wrongful death claim. **AFFIRMED.**

Michael P. Jacobs of Rawlings, Nieland, Probasco, Killinger, Elwanger, Jacobs, Mohrhauser, Nelson & Early, L.L.P., Sioux City, and John Herrick and Benjamin D. Cunningham of Motley Rice, Mt. Pleasant, South Carolina, for appellant.

William R. Hughes, Jr., of Stuart, Tinley, Peters, Thorn, Hughes, Faust & Madsen, Council Bluffs, and Jason Kennedy and Adam Jagadich of Segal, McCambridge, Singer & Mahoney, Chicago, Illinois, for appellee MidAmerican Energy Company.

Leonard T. Strand and Kerry A. Finley of Simmons Perrine PLC, Cedar Rapids, for appellee Interstate Power and Light Company.

**HECHT, Justice.**

This case presents the question of whether owners of a power plant have tort liability for the wrongful death of the spouse of an employee of an independent contractor. In this suit against the plant owners, the plaintiff claims he was exposed to asbestos dust while performing construction and maintenance work at the plant over a period of several years. The plaintiff alleges he routinely encountered the carcinogen at the plant in the course of his employment and further asserts his late wife contracted mesothelioma as a consequence of her regular exposure to asbestos dust while laundering his work clothes. The district court granted the defendants' motions for summary judgment, concluding the owners owed no duty to warn the spouse of an independent contractor of the health hazards posed by asbestos. On further review of the decision of the court of appeals affirming summary judgment in favor of the owners, we conclude the owners of the power plant owed no legal duty to give such warnings to the spouse of an independent contractor's employee.

## I.     Factual and Procedural Background.

Viewing the summary judgment record in the light most favorable to the plaintiff, a reasonable person could find the following facts. In 1973, Roger Van Fossen (Van Fossen) began working on a construction project at the Port Neal power plant near Sioux City, Iowa. At that time, the plant consisted of two functional power generating units, and construction of a third unit, owned by the corporate predecessors of MidAmerican Energy Company (MidAmerican), Iowa Power and Light (IPL), and one other power company, was underway.[1] A year later,

---

[1] IPL had no ownership or operational interest in Units 1 and 2, which were already operational when Van Fossen began working at the Port Neal facility. As there

MidAmerican, IPL, and ten other power companies and municipal utilities formed an agreement to build a fourth power generating unit which was not completed until sometime in 1980.[2]

MidAmerican, as the agent of the other owners, engaged Ebasco Services (Ebasco) as the general contractor for the construction of Units 3 and 4. The construction contracts gave Ebasco full control over its employees and the construction of both units.[3] Van Fossen was employed by Ebasco as an iron-rigger on the construction projects from 1973 to 1981. When the construction of Units 3 and 4 was completed, Van Fossen continued working at the Port Neal facility. He was hired by W.A. Klinger Co. (Klinger), a company that contracted to provide maintenance services on all four of the Port Neal power units.

During his employment with Ebasco in the construction of Units 3 and 4, and while performing maintenance work on all four of the units as an employee of Klinger until 1997, Van Fossen and his clothing were exposed to various asbestos-containing products. He wore his work clothes to his home where they were regularly laundered by his wife, Ann Van Fossen (Ann).[4]

---

is no dispute in this case that MidAmerican and IPL succeeded to the interests of their corporate predecessors, we will not identify the predecessors in this opinion.

[2]MidAmerican and the other owners participated in the construction and ownership of Unit 3 as "tenants in common." MidAmerican acted as the agent of its co-owners, however, with full right to contract for materials and services necessary for the construction, and with "complete discretion in the construction and operation of such unit." MidAmerican was similarly authorized by a written agreement to act as the agent of its several tenants in common in "supervis[ing] and perform[ing] engineering and other services in connection with the construction of Unit 4."

[3]Van Fossen makes no claim that the owners maintained substantial control over Units 3 and 4 during the construction phase.

[4]Ann never visited the Port Neal power plant. MidAmerican and IPL suggest Ann's exposure to asbestos dust may have come from sources other than the Port Neal power plants. In particular, the summary judgment record suggests Van Fossen was

After Van Fossen's retirement in 1997, Ann was diagnosed with malignant peritoneal mesothelioma, a cancer commonly associated with exposure to asbestos. After Ann's death, Van Fossen filed this wrongful death lawsuit against several defendants, including MidAmerican and IPL, asserting the defendants negligently failed to warn Ann of the health risks associated with exposure to asbestos. MidAmerican and IPL filed motions for summary judgment claiming they have no liability for Ann's death because they owed no duty to warn family members of employees of independent contractors of the risks associated with exposure to asbestos. After a hearing, the district court granted the motions, concluding MidAmerican and IPL owed no legal duty to Ann, the spouse of an independent contractor's employee, who was exposed to asbestos at a location remote from the plant premises.

We transferred Van Fossen's appeal to the court of appeals. The court of appeals affirmed the district court's summary judgment ruling, and we granted Van Fossen's application for further review.

## II. Scope of Review.

We review a trial court's grant of summary judgment for correction of errors at law. *Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 331 (Iowa 2005). On motion for summary judgment, the court must: (1) view the facts in the light most favorable to the nonmoving party, and (2) consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . .

---

also exposed to asbestos at locations away from the workplace while pursuing his hobby of automobile renovation. However, as we conclude the premises-owners owed no legal duty to Ann, we do not address this factual issue.

the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The existence of a legal duty is a question of law for the court to decide. *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 341 (Iowa 2005).

**III. Discussion.**

**A. Duty Theories Asserted by Van Fossen.** It must be noted at the outset that Ann never visited the power plant. Accordingly, Van Fossen's claim on appeal that MidAmerican and IPL owed Ann a duty is not based on the well-established special duty of possessors of real estate to protect non-trespassers against dangerous conditions on real estate. *See* Restatement (Second) of Torts § 343, at 215–16 (1965). Instead, Van Fossen claims MidAmerican and IPL are liable as the employer of an independent contractor. Although the general rule is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants," *id.* § 409, at 370, Van Fossen contends several exceptions to this rule apply in this case. Specifically, Van Fossen relies on exceptions found in the second Restatement sections 413, 416, and 427 for work likely to create a peculiar unreasonable risk of physical harm unless special precautions are taken and for work involving a special danger inherent in the work. In addition, Van Fossen contends MidAmerican and IPL owed Ann a general common-law duty to warn of the risks associated with exposure to asbestos.

We will discuss each of Van Fossen's duty theories in turn.

**B. Duty to Provide for Taking Precautions Under Restatement (Second) Sections 413 and 416.** Under sections 413 and 416 of the Restatement (Second) of Torts, one who employs an independent contractor may be liable if the work performed by the contractor involves

a peculiar unreasonable risk of harm to others. Under section 413, the employer has a duty to either (1) contractually allocate to the contractor the burden of taking precautions against a peculiar unreasonable risk of physical harm to others, or (2) exercise reasonable care to provide in some manner for such precautions if the employer should recognize that the work is likely to create such a risk. Restatement (Second) § 413, at 384–85; *Kragel v. Wal-Mart Stores, Inc.,* 537 N.W.2d 699, 703 (Iowa 1995) (stating section 413 addresses liability of the employer because of the employer's actual fault). Under section 416, the employer may be held vicariously liable for the negligence of the contractor performing the work even though the employer has contractually or otherwise provided for precautions against the peculiar risk. Restatement (Second) § 416, at 395; *Kragel*, 537 N.W.2d at 703 (stating employer's liability under section 416 is vicarious).

We have previously considered whether work performed by contractors involved risks so "peculiar" as to justify liability under these sections of the Restatement (Second). In two early cases, both involving roofing work, we found the exceptions applied and that a general contractor owed a duty to an employee of an independent contractor. *Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116 (Iowa 1976); *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967). In *Giarratano*, without discussing why the employee's work atop the roof eighty feet above the ground involved a peculiar risk, we summarily concluded substantial evidence of a peculiar risk appeared in the record supporting the existence of a duty on the part of the general contractor under

sections 413 and 416.[5] *Giarratano*, 259 Iowa at 1308, 147 N.W.2d at 834. Similarly, in *Trushcheff*, in summary fashion and without conducting an analysis of the features of Trushcheff's roofing work that created a peculiar risk, we observed "it cannot be plausibly argued [the general contractor] owed Trushcheff no duty of care at the time of the accident" under sections 413 and 416. *Trushcheff*, 239 N.W.2d at 126.

We next addressed the concept of peculiar risk in *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221 (Iowa 1974). The City of Altoona contracted with a paving contractor for the construction of a paving project. *Porter*, 217 N.W.2d at 226. Porter, who was employed by the contractor, was electrocuted when a co-employee operating a crane brought it in contact with Iowa Power's electric line. *Id.* Porter's administrator sued the city, the city's engineer, and the power company alleging the defendants negligently failed to provide a safe workplace and to warn of the danger from the electrical line. *Id.* at 231. Affirming the district court's refusal to submit to the jury specifications of negligence based on sections 413 and 416, we concluded the presence of electric transmission and distribution lines near streets is a matter of common knowledge and a hazard that a paving contractor can reasonably be expected to take precautions against to prevent electrocution of its employees. *Id.* at 232–33. Accordingly, we concluded the city owed no duty to Porter because the risk of physical injury arising from the electric lines was not a peculiar risk. *Id.* at 233.

Many types of industrial work involve some significant degree of risk that is outside the definition of peculiar risk under the Restatement

---

[5]In *Giarratano* we also concluded summarily that the general contractor owed a duty under section 427. *Giarratano*, 259 Iowa at 1308, 147 N.W.2d at 834. We discuss below the applicability of section 427 in this case.

(Second) sections 413 and 416. In yet another case arising from an injury sustained by an employee of a roofing contractor, we expressly considered "[w]hat types of work by their very nature, involve a peculiar risk of harm." *Lunde v. Winnebago Indus., Inc.*, 299 N.W.2d 473, 478 (Iowa 1980). We reasoned a peculiar risk of harm as contemplated in section 416 inheres in the nature of the work. *Id.* at 477–78. Ordinary construction work requires routine precautions " 'which any careful contractor could reasonably [be] expected to take,' " and is therefore not generally considered to involve a peculiar risk. *Id.* at 478 (quoting *Porter,* 217 N.W.2d at 232). Hazards introduced by the negligence of the contractor, rather than by the inherently dangerous nature of the work, are also not classified as peculiar risks. *Id.* at 479. Consistent with the rule stated in *Lunde*, we subsequently held the use of scaffolding in a residential construction project did not involve a peculiar risk. *Downs v. A & H Constr., Ltd.,* 481 N.W.2d 520, 526–27 (Iowa 1992). Our court of appeals applied the same rule in deciding an employee of an independent contractor who inhaled gas fumes and sustained a brain injury while cutting and capping a live gas line in a trench was not injured as a consequence of a peculiar risk. *Hernandez v. Midwest Gas Co.,* 523 N.W.2d 300, 305 (Iowa Ct. App. 1994).

Applying the principles derived from the foregoing authorities, we conclude the risk that asbestos fibers would be carried home by Van Fossen and cause injury to Ann was not a risk that inhered in the construction and maintenance work performed by Van Fossen as an iron worker at the Port Neal facility. It was instead a risk that was occasioned by the failure of Ebasco and Klinger to employ routine precautionary measures against ordinary and customary dangers that MidAmerican and IPL could reasonably assume would be undertaken by any careful

contractor. These routine measures could have, for example, included workplace laundering or other safe management of clothing worn by construction workers exposed to asbestos at the Port Neal plant. Accordingly, we conclude the district court correctly determined the risk which led to the injury claimed by the plaintiff was not a peculiar risk under sections 413 and 416.[6]

**C. Contractor's Duty as to Inherently Dangerous Activities.**
Van Fossen also contends the district court erred in concluding, as a matter of law, that MidAmerican and IPL owed no duty under Restatement (Second) section 427 under the circumstances presented in this case. Under section 427, one who employs an independent contractor to do work which the employer knows or has reason to know involves an "abnormally dangerous activity" owes a nondelegable duty to those exposed to the hazard. Restatement (Second) § 427, at 418. To be an inherently dangerous activity, "the danger must inhere 'in the activity itself at *all times*, whether or not carefully performed.' " *Clausen v. R.W. Gilbert Constr. Co.,* 309 N.W.2d 462, 467 (Iowa 1981) (quoting *Rodriques v. Elizabethtown Gas Co.,* 250 A.2d 408, 413 (N.J. 1969)). Thus a danger is not inherent in work "unless it attends the normal and usual method of doing the work." *Claussen,* 309 N.W.2d at 466. Stated another way, a danger for which the employer of an independent contractor remains liable "must be inherent in the work *when properly done.*" *Id.* (emphasis added).

We conclude the district court correctly determined MidAmerican and IPL owed no duty under section 427 as a matter of law. Van Fossen

---

[6]Because of the conclusory nature of the analysis in *Giarratano* and *Trushcheff,* we do not find them instructive. To the extent our decisions in *Giarratano* and *Trushcheff* suggest a more expansive definition of peculiar risk than has been developed in *Porter*, *Downs*, and *Lunde*, we disavow them.

failed at the summary judgment stage to produce evidence tending to prove Van Fossen's exposure to asbestos constituted a special danger inherent in or normal to his construction and maintenance work had it been performed with routine safety precautions which any careful contractor could reasonably have been expected to take. *Porter,* 217 N.W.2d at 232. To be sure, exposure to asbestos presents a grave health risk for industrial workers. The mere presence of such a grave risk of physical injury in the workplace is not, standing alone, sufficient to render work inherently dangerous under section 427. *See Hernandez,* 523 N.W.2d at 304–05 (concluding grave risks associated with cutting and capping live gas line in an excavated trench arose from negligence in operative details of work and were therefore not inherent in the work). The grave risk associated with exposure to asbestos in the workplace at the Port Neal plant was not abnormally dangerous under section 427 because it was not inherent in Van Fossen's work. The risk arose not from the nature of the construction and maintenance work, but rather from the manner in which the work was performed by Ebasco and Klinger without reasonable safety precautions to manage the ordinary and customary dangers associated with exposure to asbestos. Accordingly, we affirm the district court's determination that MidAmerican and IPL have no liability under section 427 under the circumstances presented in the summary judgment record.

**D. General Duty to Exercise Reasonable Care.** We next consider Van Fossen's claim that MidAmerican and IPL owed a general duty to exercise reasonable care to warn Ann of health hazards associated with exposure to asbestos. This claim is separate and distinct from the special duty owed by employers of independent contractors under section 413 and the vicarious liability of such employers for the

negligence of their contractors under sections 416 and 427.[7] The district court concluded MidAmerican and IPL owed no duty to warn a household member of a person employed by an independent contractor. The court, applying the then extant analytical framework for determining whether a duty is owed, reasoned that an injury to Ann, a person with whom MidAmerican and IPL had no relationship, was not foreseeable to the defendants. *See J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 258 (Iowa 1999) (holding courts consider the relationship between the parties, reasonable foreseeability of harm to the person injured, and public policy factors in deciding whether a duty is owed).

After the district court filed its summary judgment decision in this case, we filed our opinion in *Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009). In *Thompson*, we adopted the framework proposed in the Restatement (Third) of Torts for the determination of the existence of a general duty to exercise reasonable care. *Id.* at 834. Under this framework, the foreseeability of physical injury to a third party is not considered in determining whether an actor owes a general duty to exercise reasonable care. *Id.* at 835; Restatement (Third) of Torts: Liab. for Physical Harm § 7 cmt. *j*, at 98 (Proposed Final Draft No. 1, 2005). Although the district court considered the foreseeability of a risk of physical injury to Ann in its analysis of the duty issue because it did not have the benefit of our decision in *Thompson*, summary judgment was nonetheless proper under our newly adopted analytical principles.

Under the Restatement (Third) framework adopted in *Thompson*, an actor owes a general "duty to exercise reasonable care when the

---

[7]It is also distinct from the special duties owed by landowners described in Restatement (Second) sections 328E through 350, which Van Fossen does not assert in this appeal.

actor's conduct creates a risk of physical harm." Restatement (Third) § 7(a), at 90. However,

> [i]n exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification.

*Id.* § 7(b), at 90. We conclude this case presents an instance in which the general duty to exercise reasonable care is appropriately modified.

One who employs an independent contractor owes no general duty of reasonable care to a member of the household of an employee of the independent contractor. Instead of the broad general duty of due care described in Restatement (Third) section 7, employers of independent contractors owe only the limited duty prescribed in Restatement (Second) section 413 and may be held vicariously liable for the negligence of their contractors under circumstances described in sections 416 and 427.[8]

---

[8]We note section 51 of the tentative draft of the Restatement (Third) of Torts proposes retention of the rule of limited liability for employers of independent contractors. The section summarizes the duties owed by possessors of land and provides:

> Whether a land possessor is subject to vicarious liability as the principal of an independent contractor hired to perform work on the land is governed by Restatement Third, Agency §§ 7.03–7.08. Nondelegable duties may be applicable to land possessors, thereby imposing vicarious liability for the torts of their independent contractors, and are contained in Restatement Second, Torts §§ 416–429.

Restatement (Third) of Torts: Liab. For Physical and Emotional Harm § 51 cmt. *g*, at 32 (Tentative Draft No. 6, 2009). We conclude MidAmerican's duty under the circumstances presented here was a limited one notwithstanding Van Fossen's contention that at least a part of his exposure to air-borne asbestos fibers occurred as he passed through Units 1 and 2 en route to his work station during the construction of Unit 3. Van Fossen emphasizes MidAmerican—not Ebasco—was in possession and control of Units 1 and 2 at all times during the construction of Unit 3, and MidAmerican is therefore not entitled to the protection of a limited duty under sections 413, 416, and 427 for any exposures experienced by Van Fossen while passing through Units 1 and 2. The district court concluded Van Fossen failed at the summary judgment stage to prove he experienced an actual exposure to asbestos while traversing Units 1 or 2, and Van Fossen does not separately challenge this conclusion on appeal. Furthermore, Van Fossen's brief expressly disclaims any argument that MidAmerican owed Van Fossen or Ann a duty under Restatement (Second) section 343 as a possessor of the plant.

Our determination that MidAmerican and IPL owed only a limited duty to Van Fossen is also appropriate because the summary judgment record is devoid of evidence tending to prove MidAmerican and IPL exercised control over Ebasco or Klinger to such an extent as would support a broader duty. Under the retained control standard, one who employs an independent contractor is not liable unless he retains control of the contractor's day-to-day operations. *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 813 (Iowa 1994); *see also Porter*, 217 N.W.2d at 229–30; Restatement (Second) of Torts § 414 cmt. *c*, at 388. "[T]he issue of retained control is inescapably part of the duty issue, which is necessarily and properly determined as a matter of law by the court." *Hoffnagle*, 522 N.W.2d at 814.

Our conclusion that no general duty of reasonable care is owed by employers of contractors under the circumstances of this case is consistent with the prevailing view in other jurisdictions. Most of the courts which have been asked to recognize a duty to warn household members of employees of the risks associated with exposure to asbestos conclude that no such duty exists. *See, e.g., Martin v. Cincinnati Gas & Elec. Co.,* 561 F.3d 439, 446 (6th Cir. 2009); *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 27 (Del. 2009); *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005); *Nelson v. Aurora Equip. Co.*, 909 N.E.2d 931, 939 (Ill. App. Ct. 2009); *In re Certified Question*, 740 N.W.2d 206, 209 (Mich. 2007); *Adams v. Goodyear Tire & Rubber Co.*, No. 91404, 2009 WL 280398, *4 (Ohio Ct. App. Feb. 5, 2009).

We have identified only four courts that have acknowledged the existence of a duty to warn employees' household members of the risks associated with exposure to asbestos. *See Zimko v. Am. Cyanamid*, 905 So. 2d 465, 484 (La. Ct. App. 2005); *Olivo v. Owens-Ill., Inc.,* 895 A.2d

1143, 1149 (N.J. 2006); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 354 (Tenn. 2008); *Rochon v. Saberhagen Holdings, Inc.*, No. 58579-7-I, 2007 WL 2325214, *2-3 (Wash. Ct. App. Aug. 13, 2007).[9] However, three of these four cases recognizing a duty to warn are distinguishable because they did not involve independent contractors. Rather, *Satterfield, Rochon*, and *Zimko* concluded an employer owed a duty to the household member of its own employee. *Satterfield*, 266 S.W.3d at 351; *Rochon*, 2007 WL 2325214 at *1; *Zimko*, 905 So. 2d at 470. Accordingly, we do not find these decisions persuasive in this case because Van Fossen was not an employee of MidAmerican or IPL. *Olivo*, however, did involve the wife of an employee of an independent contractor hired by Exxon Mobil, the premises-owner, a factual scenario similar to the case at hand. *Olivo*, 895 A.2d at 1146. However, other key facts are significantly different. The New Jersey Supreme Court remanded the case for further proceedings because a factual issue existed as to the amount of control Exxon Mobil exercised over the work being done by the subcontractor's employee. *Id.* at 1151. Specifically, there was evidence tending to prove Exxon Mobil knew of the risks of asbestos exposure and had failed to provide precautions to employees despite giving safety instructions and respiratory protection to employees of independent contractors. *Id.* Because of the significant factual differences between *Olivo* and this case and also because of the public policy considerations discussed below, we are not persuaded by the decision in *Olivo*.

The limited nature of the duty owed by employers of independent contractors takes into account the realities of the relationship between

---

[9]Although a fifth court concluded in *In re New York City Asbestos Litigation*, 786 N.Y.S.2d 26, 28 (App. Div. 2004), that a duty was owed to warn household members against exposure to asbestos, that decision was subsequently reversed. *See In re New York City Asbestos Litig.*, 840 N.E.2d 115, 123 (N.Y. 2005).

employers and their contractors. One of these realities is that employers often have limited, if any, control over the work performed by their contractors. Employers typically hire contractors to perform services beyond the employers' knowledge, expertise, and ability. The contractors' knowledge and expertise places them in the best position to understand the nature of the work, the risks to which workers will be exposed in the course of performing the work, and the precautions best calculated to manage those risks. These realities dictate that the persons in the best position to take precautions to manage the risks are the contractors. The policy of the law therefore justifies the rule placing the primary responsibility on the contractor for assuring proper precautions will be taken to manage risks arising in the course of the performance of the work. The same realities justify the well-established rules limiting the liability of employers of independent contractors to the circumstances specified in Restatement (Second) sections 413, 416, and 427. If liability were not limited in this fashion, inefficiencies would result as employers would be required to develop the knowledge and expertise in their contractors' fields so as to be prepared to understand even the ordinary risks involved in the work and assure that the precautions necessary to manage those risks are taken. As one court has noted, "if the law imposed on the principal liability for failure to supervise or monitor the contractor's activities, the result is added cost for minimal benefit." *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 953 (Ind. 2005).

Additional policy reasons support the imposition of only a limited duty on employers of independent contractors. If employers of independent contractors were to bear an unlimited general duty to exercise reasonable care, as Van Fossen urges, when their contractors'

work involves asbestos, the universe of potential persons to whom the duty might be owed is unlimited. The general duty of reasonable care urged by Van Fossen would extend even to persons like Ann who never visited the property owned by MidAmerican and IPL. Such an expansion of the duty of employers of independent contractors to exercise reasonable care would arguably also justify a rule extending the duty to a large universe of other potential plaintiffs who never visited the employers' premises but came into contact with a contractor's employee's asbestos-tainted clothing in a taxicab, a grocery store, a dry-cleaning establishment, a convenience store, or a laundromat. We conclude such a dramatic expansion of liability would be incompatible with public policy, and therefore reject it.

## IV. Conclusion.

The work performed by Van Fossen for MidAmerican and IPL did not involve a peculiar risk or abnormally dangerous activity. Accordingly, the district court correctly concluded MidAmerican and IPL owed no duty to Ann, a household member of an independent contractor's employee. Policy reasons lead us to reject Van Fossen's invitation to impose a general duty requiring MidAmerican and IPL to warn Ann of the hazards associated with exposures to asbestos. We affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Baker, J., who takes no part.